NOT FOR PUBLICATION (Doc. No. 22)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| James D. WALLACE & Colleen M. READY, h/w, | : : : | Civil No. 14–4362 (RBK/AMD) |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | |
| MISSION SOLUTIONS, LLC, et al., | : : | |
| Defendants. | : : | |

**KUGLER**, United States District Judge:

This action comes before the Court on Defendants Mission Solutions, LLC ("Mission Solutions"), ASRC Federal Holding Company, LLC ("ASRC Federal"), and Mark Halbig's Motion for Summary Judgment (Doc. No. 22), pursuant to Federal Rule of Civil Procedure 56. Because Plaintiffs James D. Wallace and Colleen M. Ready raise genuine issues of material fact, Defendants' Motion is **DENIED**.

## I.   SUMMARY JUDGMENT STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide

issues of fact. *Id.* at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. *Id.* at 255.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257. Furthermore, the nonmoving may not simply allege facts, but instead must "identify those facts of record which would contradict the facts identified by the movant." *Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002). The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II. BACKGROUND[1]

Plaintiff Wallace was an employee of Mission Solutions beginning with its establishment in October 2009, and he held the position of Director of Contracts throughout his tenure at Mission Solutions. Silverman Cert., Ex. A ("Wallace Dep.") at 42:15–20, 43:2–4. In this position, Wallace was responsible for reviewing policies, contracts, and various documents and agreements, as well as for preparing agreements and providing guidance on "all types of contractual issues[.]" *Id.* at 47:17–48:4. As a Mission Solutions employee, Wallace received an award as well as annual bonuses for his performance. *Id.* at 61:20–64:1.

In October 2010, ASRC Federal acquired Mission Solutions. *Id.* at 45:5–7. Wallace remained Director of Contracts at Mission Solutions after its acquisition by ASRC Federal. *Id.* at

---

[1] The Court presents the facts in the light most favorable to Plaintiffs.

2

42:15–20. In August 2013, Wallace gained the duty of certifying System for Award Management (SAM) data for Mission Solutions. Silverman Cert., Ex. V ("Wallace Aff.") ¶ 4. SAM is a "combined federal procurement system operated by the federal government[.]"*Id.* ¶ 5. Wallace believed that submitting false data to SAM could constitute a crime. Wallace Dep. at 72:12–73:10. As part of his duty of certifying SAM data, Wallace was required to disclose Mission Solutions' five employees with the highest total compensation. *Id.* at 76:3–18.

In the summer or fall of 2013, Wallace's then-supervisor John DeCosmo informed him that Defendant Mark Halbig would review his work. *Id.* at 43:19–44:15. On September 13, 2013, Wallace emailed Halbig and informed him that Wallace needed to update SAM with the salary information for Mission Solutions' five employees with the highest total compensation. Silverman Cert., Ex. B. Halbig agreed to provide that data to Wallace. *Id.* On September 30, 2013, Wallace emailed Halbig and again asked him to supply the relevant salary information. *Id.*

On October 17, 2013, Wallace emailed Halbig again to ask him for the relevant salary information. *Id.* Halbig emailed Wallace a table with salary data from 2012. *Id.* Wallace responded almost immediately, informing Halbig that the data may not be current and asking Halbig to check the information. *Id.* Halbig did not respond to Wallace's email that the salary data may be incorrect. Wallace Dep. at 104:2–4. Wallace refused to enter into SAM the data that Halbig emailed to him on October 17, 2013. *Id.* at 107:6–22. Wallace informed DeCosmo that he had requested the salary information, that it was "incorrect, inaccurate or false[]" and that he could not use the data to update SAM. *Id.* at 109:15–110:21. *See also* Silverman Cert., Ex. F ("DeCosmo Dep.") at 25:13–26:10.

On December 26, 2013, Wallace emailed Halbig and again requested data for the SAM certification. Silverman Cert., Ex. G. Halbig responded, instructing Wallace to use the 2012 data

3

provided in his October 17, 2013 email. *Id.* Wallace refused to enter that data into SAM because he believed the data to be false. Wallace Dep. at 121:13–122:9. Wallace informed DeCosmo that he had again asked Halbig for information, that the data was false and Wallace could not input it into SAM, and that he needed to obtain the correct information by January 22, 2014. *Id.* at 122:10–24. DeCosmo advised Wallace to reach out to other employees of Mission Solutions, including Duva Rider, to obtain the salary information. *Id.* at 123:1–12. Halbig was aware of Wallace's communications with Rider and Wallace's attempts to obtain salary information to update SAM. Halbig Dep. at 37:2–14.

In early January 2014, Rider referred Wallace to Gretchen Gwyn, a Maryland employee who worked in payroll. Wallace Dep. at 135:20–136:20. Wallace emailed Gwyn twice, but he did not get a response. *Id.* at 137:19–138:8. After Wallace's second email to Gwyn, in mid-January 2014, he received a phone call from Halbig. *Id.* at 139:11–17. In that telephone call, "Halbig explained that he was unfamiliar with any requirement from SAM for [Wallace] to respond at that time." *Id.* at 139:18–22. In response, Wallace emailed Halbig on January 16, 2014 with the December 23, 2013 notice that the SAM registration was expiring on January 22, 2014. Silverman Cert., Ex. I. Halbig did not respond to Wallace's January 16, 2014 email. Wallace Dep. at 140:23–141:1.

On January 23, 2014, Halbig called Wallace and informed him that a position was going to be available in Maryland. *Id.* at 159:3–7. Halbig did not inform Wallace that his position was being consolidated or that Wallace was being terminated. Wallace Aff. ¶ 21; Wallace Dep. 181:10–19. On January 29, 2014, Mr. Wallace applied for ASRC Federal's Director of Contracts position in Maryland. Silverman Cert., Ex. J.

On January 31, 2014, Mr. Wallace attended a meeting and learned that his position was being eliminated. Wallace Dep. at 152:14–158:23. Following that meeting, Wallace called Halbig. *Id.* at 179:17–180:6. Halbig told Wallace that he was "offended" that Wallace called, *id.* at 180:7–12, that Wallace had been "contrary," Wallace Aff. ¶¶ 24–25, and that Wallace "no longer had a position with Mission Solutions and further that [Wallace] would never be hired by ASRC Federal." Silverman Cert., Ex. E; Wallace Aff. ¶ 24.

Wallace emailed Halbig on February 1, 2014, discussing the contents of their January 31, 2014 call. Silverman Cert., Ex. E. Halbig responded on February 3, 2014, advising Wallace that his position had not been terminated, that he should go to work, and that he would provide Wallace a more detailed explanation. Wallace Dep. at 183:15–184:1. Halbig emailed again on February 4, 2014, informing Wallace that his position was being eliminated, that Halbig was in receipt of Wallace's application for the Maryland Director of Contracts position, and that Wallace's employment would "remain in effect through March 31, 2014." *Id.* at 184:11–189:3. Wallace interviewed for the Maryland Director of Contracts position on February 21, 2014. Silverman Cert., Ex. M. Halbig indicated that he had "no interest" in Wallace for the Maryland Director of Contracts position and he did not recommend Wallace for another position. *Id.*

On March 6, 2014, Wallace emailed Halbig and Karen Soranno to ask if they had made a decision about the Maryland Director of Contracts position. Wallace Dep. at 194:24–195:12. Soranno responded, informing Wallace that decision would be made soon. *Id.* at 195:15–21. Wallace never heard anything further about the Maryland Director of Contracts position from either ASRC Federal or Mission Solutions. *Id.* at 198:1–14.

On March 26, 2014, Wallace emailed Halbig to inquire if March 31, 2014 would be his last day. Silverman Cert., Ex. U. Wallace was advised on March 27, 2014 that his employment

5

would terminate as of March 31, 2014. Wallace Dep. at 54:6–16. ASRC Federal had not filled the Maryland Director of Contracts position when Wallace was terminated. Halbig Dep. at 58:7–12. Rhonda Harrison was Director of Contracts for another ASRC Federal subsidiary, and her position was combined with Wallace's position and consolidated to the Maryland Director of Contracts position. Halbig Dep. at 58:19–59:13. Harrison remained employed until May 2014. *Id.* at 59:14–16. Other than Wallace and Harrison's positions, no other positions were consolidated to ASRC Federal from its subsidiaries. Silverman Cert., Ex. D at 46:9–13.

Wallace and his wife, Colleen M. Ready, filed this suit in state court. Defendants removed this case to federal court on July 11, 2014. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount-in-controversy exceeds $75,000.

## III. DISCUSSION

Wallace brings claims against Mission Solutions, ASRC Federal, and Halbig for violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19–1 *et seq.*, and for wrongful discharge in violation of public policy. Ready brings *per quod* claims derived from Wallace's common law wrongful discharge claims.

### A. CEPA Claims

New Jersey courts apply a burden-shifting analysis for CEPA claims where there is no "direct evidence of discriminatory animus." *See Fleming v. Correctional Healthcare Solutions, Inc.*, 164 N.J. 90, 100–01 (2000). The plaintiff bears the burden of establishing a *prima facie* case of unlawful retaliation. *Schlichtig v. Inacom Corp.*, 271 F. Supp. 2d 597, 611 (D.N.J. 2003). *See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden of establishing a *prima facie* case is "not intended to be onerous." *See Marzano v. Computer Sci.*

*Corp.*, 91 F.3d 497, 508 (3d Cir. 1996). The plaintiff need only show that retaliation "*could* be a reason for the employer's action." *See id.* If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to present a legitimate, non-retaliatory reason for its actions. *See McDonnell Douglas*, 411 U.S. at 802. The burden then shifts back to the plaintiff. To survive summary judgment, a plaintiff must "offer[] sufficient evidence for a reasonable jury to find that the employer's proffered reason for the discharge was pretextual and that retaliation for the whistleblowing was the real reason for the discharge." *Blackburn v. UPS, Inc.*, 179 F.3d 81, 92–93 (3d Cir. 1999).

To establish a *prima facie* case of unlawful retaliation under CEPA, a plaintiff must show that he: (1) reasonably believed that the employer's conduct violated either a law or rule or regulation; (2) performed whistle-blowing activities; (3) suffered an adverse employment action; and (4) can establish a causal connection between the whistle-blowing action and the adverse employment action. *Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003). Defendants do not dispute that Wallace has presented at least a genuine issue of material fact as to the first three prongs.[2] Defendants argue that Wallace has not presented evidence of a causal connection between his whistle-blowing activity and their alleged retaliatory conduct. *See* Defs.' Br. at 14–15.

Plaintiffs need not present direct evidence of causation to prevail on a CEPA claim of unlawful retaliation. *See Maimone v. City of Atlantic City*, 188 N.J. 221, 238–39 (2006). A jury may make a finding of causation "based solely on circumstantial evidence that the person ultimately responsible for an adverse employment action was aware of an employee's whistle-blowing activity." *Id.* Temporal proximity of a plaintiff's whistle-blowing activity and alleged

---

[2] Defendants argue that Mr. Wallace "ultimately will fail to establish the first two prongs[.]" *See* Defs.' Br. at 13 n.7. But whether Mr. Wallace ultimately will be able to prove his case at trial is irrelevant to the Defendants' current motion.

7

retaliatory conduct is circumstantial evidence "that may support an inference of causal connection." *Id.* at 237.

Wallace has presented sufficient evidence that a reasonable jury could find a causal connection between Wallace's alleged whistle-blowing activity and Defendants' actions in terminating him or failing to hire him for another position. Wallace sought the compensation information for SAM from September 2013 through at least mid-January 2014. Wallace learned of his termination on January 31, 2014. Halbig was admittedly aware of Wallace's communications with Rider, and a reasonable jury could infer that he was aware of Wallace's attempted communication with Gwyn.[3] Furthermore, a reasonable jury could infer that Halbig's statements that Wallace was "contrary" and that Wallace "would never be hired by ASRC Federal" relate to Wallace's refusal to input the salary data that Halbig provided into SAM.

Defendants articulate a legitimate, non-retaliatory reason for the adverse employment actions taken against Wallace—"ASRC Federal's desire to reorganize the contracts and procurement department and Wallace's poor interview performance and lack of qualifications for the ASRC Federal Direction of Contracts position[.]" Defs.' Mot. at 15. Wallace thus has the burden of presenting evidence that raises a genuine issue of material fact as to pretext.

A plaintiff can raise an inference of pretext by presenting evidence that others who did not engage in whistle-blowing activity were treated more favorably. *See, e.g., Jackson v. Temple Univ. Hosp.*, 501 Fed. App'x. 120, 122 (3d Cir. 2012). A proper comparison is made to another who is similar to the plaintiff in "all relevant respects." *Opsatnik v. Norfolk Southern Corp.*, 335 F. App'x. 220, 222–23 (3d Cir. 2009). Rhonda Harrison was the Director of Contracts at another

---

[3] Halbig called Wallace regarding the SAM requirements after Wallace unsuccessfully emailed Gwyn twice in January 2014.

8

subsidiary of ASRC, and her position was consolidated with Wallace's position. Harrison's employment, however, continued approximately two months longer than Wallace's employment. Although Harrison's position was also eliminated, a reasonable jury could find that Defendants treated her more favorably by employing her for an additional two months.

It is not this Court's role to weigh the evidence. Wallace raises a genuine issue of material fact as to the reason for the adverse employment actions taken against him. Summary judgment is "rarely appropriate" in cases where the question is "why did the employer take an adverse employment action against plaintiff?" *Marzano*, 91 F.3d at 509. It is for the jury to decide at trial whether those actions were taken for a legitimate, non-retaliatory reason or as retaliation for Wallace's alleged whistle-blowing activity.

### B.     Unlawful Discharge in Violation of Public Policy

CEPA includes a waiver provision. N.J.S.A. 34:19–8. A plaintiff cannot pursue "both statutory and common-law retaliatory discharge causes of action." *Young v. Schering Corp.*, 141 N.J. 16, 27 (1995). Wallace agrees that he cannot bring to trial both his CEPA claims and his common law claims for wrongful discharge. Pls.' Opp'n Br. at 23.[4] The parties disagree, however, over the timing of the election of remedies. The New Jersey Supreme Court has not yet determined when a plaintiff must elect between CEPA and other causes of action. *See id.* at 32–33 (suggesting that plaintiff may not need to elect his remedy until "discovery is complete or the time of a pretrial conference[]"). This Court will allow Wallace to choose between his CEPA claims and his wrongful discharge claims at or before the pretrial conference.

---

[4] Plaintiffs' brief does not include page numbers. The Court assigns page numbers for citation purposes.

To establish a wrongful discharge claim under New Jersey law, a plaintiff must (1) identify a clear mandate of public policy violated by his termination; (2) allege that he made complaints about, or refused to participate in, conduct by defendants that violated that public policy; and (3) establish that he was discharged in retaliation for opposing the conduct of defendants that violated the public policy at issue. *See Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 72–73 (1980). Defendants challenge only prong three—causation. *See* Defs.' Br. at 21. Because Wallace raises a genuine issue of material fact as to causation and to pretext, as explained above, Wallace's wrongful discharge claims will survive summary judgment.

### C. *Per Quod* Claim

Defendants argue that Ready's *per quod* claims must fail because her claims are "dependent upon and derivative of" Wallace's claims. *See* Defs.' Mot. at 21–22 (quoting *Tichenor v. Santillo*, 527 A.2d 78, 84 n.8 (N.J. App. Div. 1987)). Plaintiffs acknowledge that Ready cannot recover under a *per quod* theory based upon Wallace's CEPA claims. Pls.' Br. at 24. Because Wallace's *Pierce* wrongful discharge claim survives summary judgment, Defendants' motion for summary judgment as to Ready's derivative *per quod* claims will also be denied. When Plaintiffs elect between Wallace's CEPA and *Pierce* wrongful discharge claims, Ready's *per quod* claims will be dismissed if Wallace's *Pierce* wrongful discharge claims are dismissed.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **DENIED**.

Dated:   01/29/2016                                                                                  s/ Robert B. Kugler

                                                                                                                ROBERT B. KUGLER
United States District Judge